UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JS BECK RD, LLC,

      Plaintiff,

v.                          Civil Case No. 22-12251

CHARTER TOWNSHIP
OF NORTHVILLE,          Sean F. Cox
                              United States District Court Judge

      Defendant.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

This is a zoning ordinance dispute. Plaintiff, JS Beck RD LLC ("Beck"), purchased two properties in Northville Township ("the Township"). The properties are zoned R-2 residential. Beck purchased the properties with an intention of building and operating a preschool.

Operating a preschool is not a proper use of R-2 residential property. Therefore, to build a preschool, Beck had to apply for a special land use permit with the Northville Township Planning Commission (the "Commission"). The Commission denied Beck's application. Beck now brings suit against the Township, alleging the Commission's denial of Beck's special land use application deprived it of its constitutional rights. Beck also brings a state law claim asking this Court to review the Commission's denial in an appellate capacity.

This matter is before the Court on the Township's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c). (ECF No. 17). The Court held a hearing on May 18, 2023. For the reasons set forth below, the Township's Motion is **GRANTED** with respect to all constitutional claims (counts

one through four). Further, the Court **DECLINES** to exercise supplemental jurisdiction over Beck's state law claim of appeal (count five).

## BACKGROUND

### A. Procedural Background

On August 25, 2022, Beck filed its Complaint against the Township in state court. On September 23, 2022, the Township removed this case to federal court, properly alleging federal question jurisdiction under 28 U.S.C. § 1331 and § 1441. (ECF No. 1).

On January 27, 2023, the Township filed a "Motion to Dismiss Complaint (ECF No. 1) Pursuant to Fed. R. Civ. P. 12(c)." (ECF No. 13). Rather than rule on the Township's Motion, this Court entered an Order giving Beck the option to file an amended complaint in lieu of responding to the Township's Motion. (ECF No. 14).

On February 23, 2023, Beck filed its "First Amended Complaint and Claim of Appeal," the active Complaint in this matter. (ECF No. 15). Accordingly, on February 27, 2023, the Court entered an Order denying the Township's original Motion as moot. (ECF No. 16).

Beck's Amended Complaint contains five counts. Count one (1), "Declaratory Relief, Violation of Law," is a request for a declaratory judgment stating the Township violated Beck's constitutional rights because denial of its special use request was not based on the requirements and standards in the Township's Zoning Ordinance, was otherwise without basis, and was an "arbitrary and capricious exercise of the police power and exclusion of legitimate land uses from the property." (ECF No. 15 ¶ 100).

In count two (2), "Violation of Due Process of Law," Beck again alleges that the Township's denial of Beck's special land use request violated its rights to substantive and procedural due process of law. (ECF No. 15 ¶ 117).

In count three (3), "Regulatory Taking," Beck alleges that the Township's denial of Beck's special use request constitutes a regulatory taking, in violation of the Fifth Amendment and the Michigan Constitution, because it was "specifically intended to prevent or delay a reasonable use or development of the property." (ECF No. 15 ¶ 121-125).

In count four (4), "Violation of 42 U.S.C. § 1988(b) and 42 U.S.C. § 1983," Beck, for a third time, alleges that the Township deprived it of its substantive due process rights by denying its special land use application. (ECF No. 15 ¶ 128, 129).

Count five (5) is a Michigan state law "Claim of Appeal" of the Commission's denial of Beck's special land use application. (ECF No. 15 ¶ 133). Beck, under Michigan statute, asks this Court to review the Township's denial in an appellate capacity.

On March 7, 2023, the Township filed a "Renewed Motion to Dismiss Complaint (ECF No. 15) Pursuant to Fed. R. Civ. P. 12(c)," the Motion currently before the Court. (ECF No. 17).

**B. Factual Background**

Beck owns two adjacent parcels of property on the corner of Beck Road and 6 Mile Road in Northville Township, Michigan. (ECF No. 15 ¶ 9). Beck's properties are located at a busy intersection and major thoroughfare on Six Mile Road. (*See* ECF No. 15-6).

Beck acquired the land with the intent to develop and operate a "day care and preschool known as Premier Academy." (ECF No. 15 ¶ 11).

The properties Beck acquired, however, are not zoned to build and operate a preschool. The properties are zoned "R-2 District, Single Family Residential District." According to the

Township Zoning Ordinance, R-2 district zoning is "intended to provide for single-family detached houses and other related facilities serving residents in the district." (ECF No. 15 ¶ 15).[1]

Nonetheless, the Township's Zoning Ordinance Table of Use states that an owner of an R-2 zoned property may apply for a special land use permit to use the property as, among other things, a "day care and preschool." (Township Twp. Table of Use, ECF No. 15-3 at PageID 598).

The Township's Zoning Ordinance defines special uses as those "considered to be more intense, or potentially more disruptive, compared to uses which are permitted by right in a particular zoning district." (ECF No. 15-4 at PageID 602). The Zoning Ordinance also sets out a procedure to apply for a special use grant. *Id.*

On February 14, 2022, Beck applied for a special land use permit to build and operate a preschool. (ECF No. 15 ¶ 34).

On March 6, 2022, the Township's traffic consultant, Peter LaMourie ("LaMourie") gave the Township his comments about Beck's proposed special use. (ECF No. 15-9). LaMourie reported that, factoring in traffic from Beck's preschool, "with adjustments to the signal operations all the movements at the Beck/Six Mile intersection will operate at an acceptable level even with background and site traffic added, except for the eastbound left turn movement that is expected to operate at a level of service E with site traffic added." (ECF No. 15-9 at PageID 718.) LaMourie identified no other major traffic concerns. *Id.*

---

[1]Under Michigan law, zoning ordinances promulgated by local governments must be "based upon a [master] plan designed to promote the public health, safety, and general welfare, to encourage the use of lands in accordance with their character and adaptability, [and] to limit the improper use of land…." Mich. Comp. L. § 125.3203(1). The Township last adopted a master plan in 2007. (ECF No. 15 ¶ 20). The Township is currently updating its Master Plan.

On March 14, 2022, the Northville Township Planner sent a letter to the Commission setting forth the standards the Commission must consider when reviewing Beck's special land use request. (*See* ECF No. 15-8). The Township Planner's letter did not provide a recommendation as to how the Commission should rule. (*See* ECF No. 15-8).

According to the letter, and the Township Zoning Ordinance, ch. 170, art. 30, § 170-30.4 (2015), the Commission must consider eight standards when reviewing Beck's special land use application. Those standards are: (1) combability with adjacent uses; (2) compatibility with the master plan; (3) traffic impact; (4) impact on public services; (5) compliance with zoning ordinance standards; (6) impact on the environment; (7) specific special land use requirements; and (8) other factors.

On March 22, 2022, the Commission held a meeting to address Beck's special land use application and operation of the preschool. (ECF No. 15 ¶ 48). Members of the Commission expressed a desire to keep Beck's properties zoned residential, in part, because of concerns that granting the special use application would change the look and feel of the area. (*See* ECF No. 15-10 at PageID 735).

The Commission also noted it had "received a number of inquiries about changing the land use designation [of Beck's properties] to commercial" when the previous owner sold the land in 2017. (*Id*. at PageID 725). The Commission denied the requests because commercial zoning was "inconsistent with the Master Plan," and because "future development of the parcels should be developed to be compatible with the density of the single family [subdivision] to the north." *Id*.

The Commission further stated that the Township has a "need for smaller commercial" properties near Beck's properties, but "concluded that intent was met in part by the limited

commercial that was either planned or approved at the time, at the corner of Five Mile and Sheldon, Six Mile and Ridge (including a day care), and the commercial at Seven Mile and Napier." *Id*.

Rather than finish the application process at the March 22, 2022, Commission meeting, Beck requested an adjournment. The Commission granted Beck's request. (ECF No. 15 ¶ 53).

In June 2022, Beck submitted a revised request and site plan to "address all of the proposed conditions stated in the March 14 Letter of the Township Planner and the stated concerns discussed at the [March 22, 2022, Commission Meeting]." (ECF No. 15 ¶ 55). Beck's revised site plan was aimed at better complimenting the surrounding residential community. (ECF No. 15 ¶ 56).

On June 28, 2022, Northville's Township Planner issued a second letter reviewing Beck's revised site plan. (ECF No. 15-12). In this letter, the Planner recommended the Commission deny Beck's application "[d]ue to the current review of the future land use plan, as part of the Master Plan process, the reduced setback (for the previous plan) to the adjacent residential properties, [and] concerns with respect to the poor offset of the proposed driveway location and the existing entrance to the residential development to the south…." (*Id*. at PageID 751).

LaMourie, the Township's traffic consultant, also wrote a second traffic report in response to Beck's altered request, in which he drew the same conclusions as his first report. Chiefly, that traffic would flow at an acceptable level, other than "eastbound left turn movement that is expected to operate at a level of service E with site traffic added." (ECF NO. 15-13 PageID 755).

On July 26, 2022, the Commission held a second hearing concerning Beck's special land use application. (ECF No. 15-5). The Commission stated it was in the middle of revising its

Master Plan and raised concerns with "introducing non-residential land uses at residential corners…" while revising the Master Plan. (ECF No. 15-15 at PageID 765). The Commission further stated, "[i]t would be more appropriate to evaluate the future land use of the subject site as part of the overall land use discussion and Master Plan process." *Id*. Lastly, the Commission reaffirmed that, in 2017, it reviewed Beck's land for rezoning and determined "that future development of the parcels should mirror the density of Hickory Creek which abuts the subject property along the north." (ECF No. 15-15 at PageID 765).

On July 28, 2022, the Commission denied Beck's application "based on findings that the special land use criteria were not met." (ECF No. 15-14). Beck now brings suit, claiming the Commission's denial violated its constitutional rights.

## STANDARD OF DECISION

When deciding a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), the Court applies the same legal standard as it would for a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Albrecht v. Treon,* 617 F.3d 890, 893 (6th Cir. 2010). Rule 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. The Court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

To survive a motion to dismiss, the complaint must offer sufficient factual allegations that make the asserted claims plausible on their face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Legal conclusions couched as factual allegations will not suffice. *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

Beck failed to allege it had a constitutionally protected interest in a special use for its properties. Beck also failed to allege that the Township's denial of its application constituted a taking. The Court will address each count in turn.

### A.  Count 1—Declaratory Judgment

Beck first seeks declaratory relief for "Violation of Law." (ECF No. 15 at 15). In its Complaint, Beck does not explicitly state which laws it would have the Court declare the Township violated by denying Beck's special use application. *Id*. Based on the rest of Beck's Complaint, however, it appears Beck seeks a declaratory judgment stating that the Township violated Beck's substantive and procedural due process rights, and that the Township's denial of Beck's special land use application constituted a regulatory taking. Count 1 is dismissed because it is duplicative of other counts in Beck's complaint.

District courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995). District courts consider five factors in assessing whether to exercise its discretion in such cases: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would be useful in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for of "procedural fencing" or "to provide an arena for a race for *res judicata*;" (4) whether the use of a declaratory action would increase the friction between federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is a

better or more effective alternative remedy. *Scottsdale Ins. Co. v. Roumph,* 211 F.3d 964, 968 (6th Cir. 2000).

Here, the Court denies Beck's request for a declaratory judgment because there is a more effective alternative. Beck seeks declaratory, injunctive, and monetary relief for violation of the same rights. (*See* ECF No. 15 at 16-22). The Court will address and enumerate all of Beck's constitutional rights when addressing its claims for injunctive and monetary relief. Therefore, Beck's request for declaratory relief adds nothing to its case and is dismissed as duplicative.

**B. Violation of Beck's Due Process Rights**

Confusingly, Beck alleges violations of its Fourteenth Amendment Due Process rights in counts two and four of its Complaint. (*See* ECF No. 15 at 16); (*See also* ECF No. 15 at 18-19). Counts two and four are largely duplicative of one another, so the Court will analyze them together.

**a. Count 2**

Count two of Beck's complaint alleges that the Township "denied Plaintiff procedural and substantive due process of the law under the Constitution of the State of Michigan and Constitution of the United States of America." (ECF No. 15¶ 117). Although Beck does not specify, the Court presumes Beck brings its due process claims under 42 U.S.C. § 1983—the proper avenue to advance such claims against a township.[2]

---

[2] Courts are authorized, under § 1983, to "redress violations of 'rights, privileges, or immunities secured by the Constitution and [federal] laws' that occur under color of state law." *Huron Valley Hosp., Inc. v. City of Pontiac,* 887 F.2d 710, 714 (6th Cir. 1989) (quoting 42 U.S.C. § 1983). This provision "creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint v. Kentucky Dep't of Corr.,* 270 F.3d 340, 351 (6th Cir. 2001).

The Fourteenth Amendment protects against the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *Golf Vill. N., LLC v. City of Powell, Ohio*, 42 F.4th 593, 598 (6th Cir. 2022). That protection has a procedural and a substantive component. *Id*.

Procedural and substantive due process claims are distinct. *See id*. Procedural due process ensures that "the government provide 'fair procedure' when depriving someone of life, liberty, or property." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).

The elements of a procedural due process claim, under § 1983, are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012) (citing *Women's Med. Prof'l Corp. v. Baird,* 438 F.3d 595, 611 (6th Cir. 2006)).

By contrast, substantive due process protects against government actions that are "arbitrary and capricious," even if there are adequate procedural safeguards. *Pearson v. Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992). Citizens have a substantive due process right "not to be subjected to arbitrary or irrational zoning decisions." *Id*. at 1217 (citing *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977)).

"To state a § 1983 substantive due process claim, in the context of zoning regulations, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *Tri–Corp Mgmt. Co. v. Praznik*, 33 Fed.Appx. 742, 747 (6th Cir. 2002) (citing *Silver v. Franklin Township Bd. Of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992)).

Traditionally, the Court would analyze a plaintiff's procedural and substantive due process claims separately. In this case, however, the Court will analyze Beck's claims together

for two reasons. First, Beck's Response Brief completely neglects its procedural due process claim and focuses exclusively on substantive due process. (*See* ECF No. 28 at 10-16).[3]

Second, both claims have a common first element, and Beck failed to satisfy that element for each claim. That is, Beck did not adequately allege it has a constitutionally protected property interest in benefitting from a special land use grant.

Property rights are created and defined by independent sources such as state law and not by the U.S. Constitution. *See Thomas v. Cohen,* 304 F.3d 563, 576 (6th Cir. 2002). To have a property interest in a benefit, a person must have more than a desire for it or unilateral expectation of it; rather, he must have a "legitimate claim of entitlement to it"—in this case, a legitimate claim of entitlement to a special land use grant. *R.S.W.W., Inc. v. City of Keego Harbor,* 397 F.3d 427, 435 (6th Cir. 2005) (citing *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972)).

Traditionally, "[a] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Med Corp., Inc. v. City of Lima,* 296 F.3d 404, 409 (6th Cir. 2002). To establish a property interest in rezoning approval or a special land use, a plaintiff must demonstrate that the government entity lacked "discretion" to deny the proposed use of the land if the proposal "complied with certain, minimum, mandatory requirements." *Id.* At 856 (quoting *Silver*, 966 F.2d at 1036).

---

[3] By failing to respond to the Township's Motion to Dismiss Beck's procedural due process claim, Beck has abandoned that claim. *See Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010). Abandonment provides for an independent basis to dismiss Beck's procedural due process claim. *See PNC Bank, Nat. Ass'n v. Goyette Mech. Co., Inc.*, 88 F. Supp. 3d 775, 785 (E.D. Mich. 2015) (dismissing claims that the plaintiffs failed to respond to in opposition to motion to dismiss, noting that "[a] plaintiff abandons undefended claims.").

Beck claims that it has a property interest because the Township did not have discretion to deny Beck's application. It argues that "[o]nce the requirements of the statute, ordinance, and regulation have been satisfied, the Planning Commission *must* approve the site plan." (ECF No. 28 at 15) (emphasis added). In support of its claim, Beck relies on *Hessee Realty, Inc. v. City of Ann Arbor*, 61 Mich. App. 319, 321, 232 N.W.2d 695, 696 (1975).

*Hessee* does not support Beck's claim. In *Hessee*, the court addressed a challenge to a city council's "narrow administrative powers of review" where a property owner sought to use their land in a manner specifically granted by the applicable zoning scheme. *Id*. at 324-25. *Hessee* does not address an application for rezoning or special land use. *Id*.

If Beck's property were zoned to permit the construction and operation of a preschool, and the Commission still attempted to deny Beck's application for building permits, then *Hessee* may be relevant. But, as it stands, *Hessee* has no bearing on an administrative body's discretionary power when determining whether to rezone or allow a special use of property.

Further, Beck is incorrect that the Commission *must* approve a special land use application that meets all enumerated standards. Mich. Comp. L. § 125.3502(4) expressly gives "[t]he body or official designated to review and approve special land uses" the discretionary authority to "deny, approve, or approve with conditions a request for special land use approval." Further, § 170-30.2(c) of Northville's Township Code explicitly states, "the Planning Commission is authorized to approve the special land use, approve the special land use with conditions, deny, or postpone action."

In sum, both Michigan law and the Northville Township Code give the Commission full discretionary authority to deny special land use applications. Therefore, Beck has not identified a constitutionally protected property interest in the benefit of a special land use permit. *See EJS*

*Props.*, 698 F.3d at 856 (quoting *Silver*, 966 F.2d at 1036). Since Beck has not adequately pled a constitutionally protected property interest, its procedural and substantive due process claims fail. Count two is dismissed.

### b. Count 4

Count four of Beck's Complaint again alleges that the Township, "acting under color of state law, [violated] Plaintiff's rights to substantive due process rights [sic] under the United States Constitution." (ECF No. 15 ¶ 131). In this count, however, Beck is explicit that it brings its claim under 42 U.S.C. § 1983 and seeks attorney's fees under 42 U.S.C. § 1988(b). (ECF No. 15 at 19).

In most respects, count four is the same substantive due process claim that the Court addressed in count two and does not warrant independent analysis. Count four does, however, include one wrinkle.

In Beck's Response Brief, it mentions, for the first time, municipal liability under *Monell*. (*See* ECF No. 28 at 20). The Court notes that if Beck intended count four to serve as a *Monell* claim for an unconstitutional policy or custom, that claim would fail.

The Supreme Court has approved municipal liability based on § 1983 when "the [municipal] action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or where such actions emanate from informal governmental custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978).

The Sixth Circuit, however, has repeatedly recognized that there can be no liability under *Monell* without an underlying constitutional violation. *Morris v. City of Detroit, Mich.*, 789 Fed. Appx. 516, 519 (6th Cir. 2019).

13

Here, as discussed above, Beck's allegations are insufficient to show the Commission violated an underlying constitutional right. That is, Beck has not shown the Commission violated Beck's procedural or substantive due process rights. Without an underlying constitutional violation, Beck has no basis to assert a *Monell* claim for liability against the Township. Count four is dismissed.

## C.  Count 3—Regulatory Taking

Beck also claims that the Township's denial of its special land use application constituted a regulatory taking in violation of the Michigan and U.S. Constitutions. (ECF No. 15 at 17-18).[4]

"The Takings Clause of the Fifth Amendment provides that private property shall not 'be taken for public use, without just compensation.'" *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017). There are two types of takings.

First, there is the classic taking claim based on "direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). "[W]here government requires an owner to suffer a permanent physical invasion of her property—however minor—it must provide just compensation." *Id.* at 538.

Second, and relevant in this case, there are so-called "regulatory takings," which concern land-use regulations. *Id.* "A regulatory taking occurs when the Government prevents a [property] owner from making a particular use of the property that *otherwise would be permissible.*" *McKay v. United States,* 199 F.3d 1376, 1382 (Fed. Cir. 1999) (emphasis added).

The Supreme Court uses two tests to evaluate whether a regulatory taking has occurred. Where a governmental action deprives property owners of 'all

---

[4] Michigan's takings jurisprudence follows federal caselaw. *See Mays v. Governor of Michigan*, 506 Mich. 157, 173 (2020) (citing the Fifth Amendment and the Michigan Constitution for takings claim). Therefore, the Court will rely on federal precedent, except where discussing Michigan cases cited by the parties.

economically beneficial uses' of their property, it is a categorical regulatory taking under *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1019 (1992). In all other cases—that is, where the property is not rendered valueless—the Court uses the balancing test of *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104 (1978).

*Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455 (6th Cir. 2009).

It was unclear from Beck's briefing which type of taking claim it brings. At hearing, the Court asked Beck to elaborate on the nature of its claim. Beck argued it pled a taking under both tests, so the Court will analyze Beck's claim using both standards. (Hr'g Tr. May 18, 2023).

### a. Category 1—The *Lucas* Test

Beck's claim fails under the *Lucas* categorical taking test. (*See* ECF No. 28 at 17-18). Beck claims it has the right to "occupy and use the Property free from governmental seizure or regulation that destroy all or substantially all of its value." (ECF No. 28 at 17).

Beck is correct that, in *Lucas*, the Supreme Court held a state entity is liable for a regulatory taking when it "deprives land of all economically beneficial use." *Lucas*, 505 U.S. at 1027. The Supreme Court also held, however, that a state cannot commit a taking if "the proscribed use interests were not part of [the owner's] title to begin with." *Id.*

More recently, in *Andrews v. City of Mentor, Ohio*, 11 F.4th 462, 472 (6th Cir. 2021), the Sixth Circuit also held the deprivation of the right to use property for a particular purpose is not a "'taking' if that right was never a part of the titleholder's bundle of rights to begin with." *Andrews,* 11 F.4th at 472.

It is undisputed that Beck's properties have been zoned R-2 residential since Beck acquired them. Property zoned R-2 is intended for single family detached housing and not the operation of a preschool. (ECF No. 15 ¶ 15). Further, owners of R-2 property in the Township *may* request special land use permits. (*Id*. at ¶ 16). Special land use is not granted as of right.

At most, when Beck purchased the properties in question, its bundle of rights included the right to build detached single-family homes and the right to *apply* for special land use permission. The ability to run a commercial business at the properties in question was not part of Beck's "bundle of rights" when it purchased the properties. Therefore, under *Lucas* and *Andrews*, denial of Beck's special use application was not a taking.

### b.   Category 2—The *Penn Central* Test

Beck's claim also fails under the *Penn Central* test. Using the *Penn Central* test is an inexact science. The Supreme Court noted that it has "been unable to develop any 'set formula' for determining when 'justice and fairness' require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons." *Penn Central*, 438 U.S. at 124.

The Court did, however, identify three factors to aid the inquiry: (1) the economic impact of the regulation on the plaintiff; (2) the extent to which the regulation had interfered with the plaintiff's distinct investment-backed expectations; and (3) the character of the governmental action. *Id.*

In its brief, Beck does not engage with the *Penn Central* factors. Instead, it devotes a mere two paragraphs to conclusory allegations unsupported by caselaw. (*See* ECF No. 28 at 18).

First, Beck claims the R-2 zoning designation does not advance a legitimate state interest because the Township zoned Beck's properties "the same as a residential multi-lot subdivision… even though the property is less than three and one-half acres and located on a hard corner of a busy intersection." *Id*

Beck's claim contradicts the record. At both hearings concerning Beck's special use application, the Commission stated it was hesitant to grant Beck's request because Beck's

parcels should be "developed to preserve the density" of the neighborhood to the north. (ECF No. 15-10 at PageID 725); (ECF No. 15-5 PageID 765).

The Commission further noted that its 2007 "Master Plan recognized the need for some smaller commercial on the west side of the Township." (ECF No. 15-15 at PageID 766). To address this need, the Master Plan designated select properties (none of which belong to Beck) as commercial to benefit the community while still serving the overall goal of "minimizing non-residential land uses at intersections within residential areas." *Id*.

As an additional reason to deny Beck's application, the Commission stated it was in the middle of revising its Master Plan, that it was concerned with "introducing non-residential land uses at residential corners…" while in the middle of revising the Master Plan, and that "[i]t would be more appropriate to evaluate the future land use of the subject site as part of the overall land use discussion and Master Plan process." (ECF No. 15-15 at PageID 765).

Beck has identified no caselaw stating that declining to grant a special land use to preserve the character of a neighborhood is an illegitimate government purpose.[5] Beck has similarly identified no caselaw stating that a township exceeds its authority by declining special

_____

[5] In the context of substantive due process claims, the Supreme Court, the Sixth Circuit, and Michigan courts have repeatedly held that preserving a neighborhood is a legitimate state interest. *See White Oak Prop. Dev., LLC v. Washington Twp.*, Ohio, 606 F.3d 842, 853 (6th Cir. 2010) (quoting, *Vill. of Belle Terre v. Boraas,* 416 U.S. 1, 2, 9 (1974), for the proposition that restricting the use of land to "one-family dwellings" did not infringe upon various constitutional rights because "[a] quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs[,]" and it is permissible "to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people."); *See also Dorman v. Twp. of Clinton*, 269 Mich. App. 638, 651, 714 N.W.2d 350, 360 (2006) (stating that preserving the residential nature of a neighborhood is a legitimate interest that may be advanced by a zoning regulation).

17

use requests while revising its master plan. The Township's reasons for denying Beck's application were legitimate.

Second, Beck alleges that "the property is not desirable to construct a single-family home," and the reasonable alternative is to grant a special use permit. (ECF No. 28 at 18). As Beck admitted at hearing, it plead no such allegation in its complaint. (Hr'g Tr. May 18, 2023). Further, Beck referenced no authority supporting its contention. Beck's argument is unsupported and entirely subjective. It carries no weight.

In the interest of completeness, the correct *Penn Central* factors further confirm that Beck's allegations are not sufficient to support a regulatory taking claim.

First, the economic impact of the regulations on Beck is null. Beck purchased residential properties. Beck still has full autonomy to use the properties in the same manner as when they were purchased. Beck has not identified any caselaw showing that a state is liable for a taking when a landowner's bundle of rights remains unchanged.

Second, Beck's allegations fall well short of showing that the Township's regulation interfered with a *reasonable* investment-backed expectation. *See Kaiser Aetna v. United States*, 444 U.S. 164, 175 (1979) (stating that one factual inquiry, under *Penn Central*, is "interference with *reasonable* investment backed expectations") (emphasis added).

Beck's only allegations on this point are that, before it purchased the properties in question, the Township Planner expressed "favorable support" for the idea of building a preschool, and that Beck purchased the properties with the intent to build a preschool. (ECF No. 15 ¶ 11, 19).

Beck has identified no caselaw showing that vague "favorable support" from a government official with no decision-making authority is sufficient to make an investment backed expectation reasonable.[6]

Third, the character of the Township's action also cuts against Beck. The Township has done nothing but preserve the status quo. Beck may use its land for the same purposes as were permitted when it acquired the properties. Beck has further failed to identify a single case where the government deprived a landowner of a constitutional right where the government has taken no action to alter existing land-use rights.

As a final note, at hearing, Beck's counsel claimed it can prove a regulatory taking under *Dorman v. Twp. of Clinton*, 269 Mich. App. 638 (2006).[7] In *Dorman*, a broker purchased property zoned light commercial. *Id*. at 642. The broker intended to build a storage facility on the property, and he claimed he had support from township officials. *Id*. After the broker purchased the property, the township voted to rezone the property to residential, effectively preventing the broker from erecting the facility. *Id*. at 643.

The township's post-purchase rezoning in *Dorman* is far more burdensome than the Northville Township's special land use denial in the instant case. Nonetheless, in *Dorman*, the Michigan Court of Appeals held the broker failed to create a dispute of fact that the township's rezoning decision constituted a regulatory taking. *Id*. at 647. The court found no regulatory taking because "a municipality is not required to zone property for its most profitable use," because "[m]ere diminution in value does not amount to [a] taking," and because "'Disparity in

---

[6] The Township Planner's "favorable support" is also contradicted by the fact that she ultimately recommended the Commission deny Beck's application. (ECF No. 15-12 at PageID 751).

[7] Beck's counsel also claimed *Dorman* was cited by the Township. (Hr'g Tr. May 18, 2023). As far as the Court can tell, the Township did not reference *Dorman* in any of its briefings.

values between residential and commercial uses will always exist;' yet, a municipality clearly is not required to favor the latter use at the expense of the former." *Id*.

Despite the antagonistic facts and holding of *Dorman*, Beck claims the case helps it because of one sentence: the *Dorman* court stated that a plaintiff can make a claim for a regulatory taking by showing "that the property was either unsuitable for use as zoned or unmarketable as zoned." *Id*.

Even assuming *Dorman* is a proper lense through which to view Beck's taking claim,[8] Beck has still failed to plead sufficient facts to make a plausible claim. As Beck admitted at hearing, it did not plead that its property is unsuitable for residential use. (Hr'g Tr. May 18, 2023).

Beck also did not allege its properties are unmarketable as zoned. In fact, the record shows the properties are marketable. Beck admitted that, in Northville Township, there are likely other residential homes built on similar lots. *Id*. The Township's Master Plan similarly shows residential lots on busy intersections are marketable. One of the Plan goals is to strategically place small commercial properties throughout residential areas of the Township, while still "minimizing non-residential land uses at intersections within residential areas." (ECF No. 15-15 at PageID 766). Construing all allegations in the light most favorable to Beck, it still plead insufficient facts to show that its properties are unsuitable or unmarketable for use while zoned residential.

In sum: (1) Beck was aware the properties it purchased were not zoned to operate a preschool; (2) the Township took no action to alter the existing land-use rights at Beck's

---

[8] The Supreme Court has cautioned there is no set formula for using the *Penn Central* test. *Penn Central*, 438 U.S. at 124. Therefore, the Court makes no findings as to whether the standard Beck referenced, from *Dorman*, is a proper way to analyze a regulatory taking claim.

properties; (3) Beck plead no facts showing it had assurances that the Township would approve a non-conforming land use; (4) Beck plead no facts showing its properties were useless or unmarketable while zoned residential; and (5) Beck failed to cite any caselaw supporting its position. Under both *Lucas* and *Penn Central*, Beck's taking claim fails. Count three is dismissed.

### D.  Count 5—State Law Claim of Appeal

Lastly, Beck brings a state law "Claim of Appeal" seeking appellate review of the Township's denial of its special land use application. (ECF No. 15 at 19-20).

A federal court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3). The Court dismissed Plaintiff's federal claims. Accordingly, the Court declines to exercise supplemental jurisdiction over Beck's state law claim of appeal.

### CONCLUSION

For the reasons stated above, **IT IS SO ORDERED** that the Township's Motion to Dismiss with respect to counts one through four is **GRANTED**.

In sum: (1) Beck's request for a declaratory judgment (count one) is dismissed because it is duplicative of the rights addressed and announced on Beck's other claims; (2) Beck's procedural and substantive due process claims (counts two and four) are dismissed because Beck failed to allege it had a constitutionally protected property interest in a special land use on its properties; and (3) Beck's regulatory taking claim (count three) is dismissed because the right to build a preschool was not in Beck's "bundle of rights" when it acquired R-2 residential properties, and because Beck failed to plead its properties are otherwise useless.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to exercise supplemental jurisdiction over Beck's state law claim of appeal because it dismissed all federal claims.

**IT IS SO ORDERED**.

Dated:  May 31, 2023                                     s/Sean F. Cox
                                                        Sean F. Cox
                                                        U. S. District Judge